UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

United States of America;
*ex rel.* KARI CRUTCHER,

        Plaintiff,

   v.

FIRST GUARANTY MORTGAGE
CORPORATION,

PACIFIC INVESTMENT
MANAGEMENT COMPANY LLC,

PIMCO INVESTMENTS LLC,

and ANDREW PETERS

        Defendants.

Civil Action No. 16-CV-03812-SCJ

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO LIFT THE STAY AND CROSS-MOTIONS TO COMPEL AND TRANSFER THE CASE TO THE DISTRICT OF DELAWARE

Plaintiff-Relator Kari Crutcher, by and through undersigned counsel, respectfully submits its Opposition to Defendants' Motion to Lift the Stay and Cross-Motions to Transfer the Case to the District of Delaware and Compel Production of Insurance.[1] Contrary to Defendants' claims, the Bankruptcy Court did not order the complaint dismissed with prejudice and the complaint does assert direct claims against PIMCO for its role in causing the submission of false claims to the United States under 31 U.S.C. § 3729 *et. seq*. Further, the Court should

---

[1] Plaintiff-Relator submits this opposition and cross motion twice to docket both the opposition and the cross motion. Both submission are the same.

fulfill the parties' agreement to transfer the case to the District of Delaware by granting the Cross-Motion to Transfer. Finally, Plaintiff-Relator files a cross-motion to compel production of PIMCO's insurance records that PIMCO previously promised to produce.

Plaintiff-Relator respectfully requests that this Court deny Defendants' Motion to Stay and grants Plaintiff-Relator's cross-motions to transfer and compel insurance documents.

Respectfully submitted,

_/s/ Samuel J. Buffone Jr._
Samuel J. Buffone, Jr. (admitted *pro hac vice*)
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

-and-

J. Nelson Thomas, Esq. (Admitted *pro hac vice*)
Jonathan W. Ferris, Esq. (Admitted *pro hac vice*)
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

-and-

Julie K. Bracker
Georgia Bar No. 073803
Jason Marcus
Georgia Bar No. 949698
**BRACKER & MARCUS LLC**
3225 Shallowford Road
Suite 1120
Marietta, GA 30062
Telephone: (770) 988-5035
Fax (678) 648-5544
Julie@FCAcounsel.com
Jason@FCAcounsel.com

*Attorneys for Plaintiff-Relator Kari Crutcher*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................. ii

Background ............................................................................................1

Argument...............................................................................................2

   I.  The Court Should Not Lift the Stay. ..................................................2

      A.   The Claims Belong to the United States, Not Plaintiff-Relator.................3

      B.   The Bankruptcy Court's Decision, Currently Under Appeal, was Narrow.
          4

      C.   Plaintiff-Relator Should at Most be Required to Amend..........................9

   II.  The Court Should Transfer the Case to Delaware..........................................10

   III. The Court Should Compel Production of PIMCO's Insurance Policies........13

Conclusion .........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Bank of Am,*, No. 18-cv-81595-MIDDLEBROOKS, 2020 U.S. Dist.
 LEXIS 256234 (S.D. Fla. Jul 20, 2020) ...................................................3

*Brandywine Communs. Techs., LLC v. Cisco Sys., Inc.*, No. 6:11-cv-1843-Orl-
 36DAB, 2012 U.S. Dist. LEXIS 68317 (M.D. Fla. Mar. 26, 2012) ...................12

*Exceptional Mktg. Grp. v. Jones*, No. 1:10-CV-1312-TWT, 2011 U.S. Dist. LEXIS
 144823, at *4 (N.D. Ga. Dec. 15, 2011) (J. Thrash) .................................... 11, 12

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir. 1994) ..........................9

*In re First Guaranty Mortg. Corp.*, No. 22-10584 (CTG) (D. Del. Jun. 30, 2022) ..1

*In re Lemco Gypsum*, 910 F.2d 784 (11th Cir. 1990) ...........................................8, 9

*In re TPC Grp., Inc.*, Case No. 22010493(CTG) 2023 Bankr. LEXIS 446 (Bankr.
 D. Del. Feb. 22, 2023) ...........................................................................7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ...............................................3

*Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005) ..............................11

*N. Am. Transp. Servs., LLC v, Ryder Truck Rental, Inc.*, No. 21-mc-21911-
 COOKE/O'SULLIVAN, 2021 U.S. Dist. LEXIS 143590 (S.D. Fla. Aug. 2,
 2021) ...............................................................................................15

*Price v. United States DOJ*, No. 16-Civ-24341-WILLIAMS/TORRES, 2018 U.S.
 Dist. LEXIS 243795 (S.D. Fla. May 21, 2018) ....................................................11

*Read v. Teton Springs Golf & Casting Club*, No. CV 08-99-E-EJL-REB, 2009 U.S.
 Dist. LEXIS 86400 (D. Idaho Sep. 21, 2009) ..........................................16

*U.S. ex rel Ebu-Issac v. Insys Therapeutics*, 2:16-CV-07937-JLS-AJW, 2021 U.S.
 Dist. LEXIS 163880 (C.D. Cal. Jun. 9, 2021) ..............................................7

*U.S. ex rel Stillwell v. Hughes Helicopters Inc.*, 714 F. Supp. 1084 (C.D. Cal.
 1989) ...............................................................................................4

*U.S. ex rel. Souza v. Embrace Home Loans*, No. 1:22-cv-00453-JJM-PAS, 2023
 U.S. Dist. LEXIS 113544 (D.R.I. June 28, 2023) .........................................6

*U.S. ex rel. Stinson. Lyons, Gerlin & Bustamante P.A. v. Blue Cross Blue Shield, Inc.*, 755 F. Supp. 1040 (S.D. Ga. 1990) ................................................................4

*U.S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104 (D.D.C. 2014) ........6

*Welt v. MJO Holding Corp. (In  re Happy Hocker Pawn Shop, Inc.)*, 212 Fed. Appx. 811 (11th Cir. 2006) ................................................................................9

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................11

31 U.S.C. § 3732(a) ................................................................................................13

**Rules**

FRCP 26(a)(2)(iv) ................................................................................................15

FRCP 34(a) ................................................................................................15

## BACKGROUND

This case is about fraud on the United States. First Guarantee Mortgage Corporation (FGMC), under Pacific Investment Management Company LLC's and PIMCO Investments LLC's (collectively "PIMCO") direction and control, knowingly underwrote government-insured mortgages that were riskier than the government allowed. Defendants profited from this scheme, selling the loans and earning interest. When those risky loans eventually defaulted, Defendants kept their profits and it was the United States that suffered the loss. This case is to right that wrong and return the Defendants' ill-gotten gains to the United States, make the United States whole, and properly deter others who would consider defrauding the United States.

PIMCO instead has repeatedly used every procedural trick in the book to delay and avoid accountability. PIMCO once again tries to do so here, asking the Court, through a supposed Motion to Lift the Stay, to instead "dismiss with prejudice all claims against the PIMCO Defendants." Mot. at 8. To support this drastic relief, PIMCO inaccurately asserts that an order of the FGMC Bankruptcy Court[2] bars the

---

[2] The United States Bankruptcy Court for the District of Delaware is overseeing the chapter 11 bankruptcy of co-Defendant First Guaranty Mortgage Corporation (FGMC). *See generally In re First Guaranty Mortg. Corp.*, No. 22-10584 (CTG) (D. Del. Jun. 30, 2022).

entirety of Plaintiff-Relator's claims. But the fallacy of PIMCO's argument is clear from both a reading of the Bankruptcy Court's order as well as the simple fact that it was FGMC that was released in the bankruptcy. The claims here are not against FGMC, and PIMCO is not released for its fraud on the United States.

Plaintiff-Relator has since appealed the findings of the Bankruptcy Court. *See* Attach. 1, Not. of Appeal, *In re First Guaranty Mortg. Co.*, ECF No. 966. This Court should transfer the case to Delaware so that one court can properly interpret the scope of the release FGMC received in bankruptcy, and properly oversee the overlap between the FGMC bankruptcy and the proof necessary here. Finally, PIMCO had agreed, but now refuses, to provide basic discovery on potential insurance coverage. Discovery of this information is necessary in part to evaluate the potential to settle this case. The Court should therefore order PIMCO to produce this basic information.

## ARGUMENT

### I.  THE COURT SHOULD NOT LIFT THE STAY.

PIMCO agreed to stay the motion to dismiss briefing so that one District Court, in Delaware, could decide whether PIMCO can hide behind FGMC to escape liability for its fraud. Having received an order from the Bankruptcy Court that merely reaffirms the Bankruptcy Court's prior orders, PIMCO now seeks to

change the stay and seek summary disposition of the case. This Court should maintain its control of this docket and enforce an orderly resolution of the issues through the stay. "[T]he power to stay proceedings in incidental to the power inherent in every court to control the disposition of the causes on its docket," and in doing so, the Court "weigh[s] competing interests and maintain[s] an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). This case should remain stayed pending disposition of Plaintiff-Relator's cross-motion to transfer and Plaintiff-Relator' appeal in the Bankruptcy Court. *See Baker v. Bank of Am,*, No. 18-cv-81595-MIDDLEBROOKS, 2020 U.S. Dist. LEXIS 256234, at *4 (S.D. Fla. Jul 20, 2020) (denying motion for lift of stay because "this case was stayed pending resolution" of another matter, and "that matter [was] still being litigated"). Further, PIMCO mischaracterizes the findings of the Bankruptcy Court to claim there are no longer any live controversies in this action, which is addressed in turn.

### A.   The Claims Belong to the United States, Not Plaintiff-Relator.

At the outset, it is important to note that the real party in interest for the underlying claims is the United States. Plaintiff-Relator is a mere *qui tam* plaintiff acting *ex rel.* the United States. This is important to understand the sheer scope of what PIMCO seeks — to bar claims it committed fraud because a separate company declared bankruptcy.

-3-

The *qui tam* provision of the FCA assigns the United States' claims to the Plaintiff-Relator. *See U.S. ex rel Stillwell v. Hughes Helicopters Inc.*, 714 F. Supp. 1084, 1098 (C.D. Cal. 1989) (stating that the FCA "essentially creates… a *de facto* assignment of a portion of the government's interest in the action). The Plaintiff-Relator's claims under the FCA do not belong to her, but have been granted to her by the United States through statute, which, in "a statutory exception to the general rule regarding standing to sue… conferred standing on *qui tam* plaintiffs **by assigning to them a portion of the government's interest** in the action." *U.S. ex rel. Stinson. Lyons, Gerlin & Bustamante P.A. v. Blue Cross Blue Shield, Inc.*, 755 F. Supp. 1040, 1044-45 (S.D. Ga. 1990) (emphasis added). Accordingly, the claims here do not belong to the Plaintiff-Relator, but the United States.

### B. The Bankruptcy Court's Decision, Currently Under Appeal, was Narrow.

Plaintiff-Relator recently appealed the findings of the Bankruptcy Court with respect to whether the derivative claims here it asserts against PIMCO are barred by the Confirmed Plan. *See* Attach. 1. This Court therefore should not effectuate an order from a bankruptcy court that is currently on appeal to a district court.

But, even if this Court applies the Bankruptcy Court Order, it is much narrower than PIMCO claims. Contrary to PIMCO's argument, the Bankruptcy Court did *not* conclude that all of the claims in this action were derivative. The

-4-

Bankruptcy Court issued an order, based on a draft by PIMCO, that is clear that it only applies to claims "relating to alter ego, veil piercing, and/or any form of vicarious liability[.]" Defs.' Mot. to Lift Stay, Ex. A, Order at ¶ 2. Nothing in the Order from the Bankruptcy Court released any direct claims that Plaintiff-Relator brought against PIMCO. While there is no dispute that paragraphs 206 to 207 assert barred theories, the rest of the Complaint asserts direct claims against PIMCO.

The direct claims of FCA liability against PIMCO are premised on the theory that PIMCO knowingly (as defined by the FCA) caused the submission of false claims. *See* Supplemental Second Amended Complaint (SSAC), ECF No. 94 at ¶ 189-205 (stating how PIMCO knowingly caused the submission of false claims through its actions and involvement in FGMC's operations). And the Bankruptcy Court contemplated that Plaintiff-Relator should be free to amend the SSAC, strike paragraphs 206-207 and clarify that the rest of the SSAC asserts direct claims. Defs.' Mot., Ex. B at 67:25, 68:1-4.

The SSAC states classic direct FCA liability by a company that caused false claims. The SSAC provides specific details about the specific conduct and problematic practices that PIMCO engaged in, which showed that it both knew FGMC was submitting false claims and that it caused FGMC to submit false

claims. A Plaintiff-Relator who highlights "specific conduct by individual Defendants," as Plaintiff-Relator does here by alleging the various ways PIMCO caused FGMC to submit false claims, can establish that the Defendants acted knowingly in allowing or orchestrating the submission of false claims. *See U.S. ex rel. Souza v. Embrace Home Loans*, No. 1:22-cv-00453-JJM-PAS, 2023 U.S. Dist. LEXIS 113544, at *11 (D.R.I. June 28, 2023). Plaintiff-Relator also established "how the implementation of [] problematic practice[s]," as described at SSAC at ¶ 187-205, caused FGMC to submit claims that violated FHA regulations. *Id.* at *9. Where a co-Defendant "oversaw [the other co-Defendant's] underwriting of" FHA backed loans and implemented various corporate practices, they "cannot have been so deeply involved with these practices while not, at least, recklessly disregarding the fact that they led to [co-Defendant's] submission of false claims." *Id.* at *11.

PIMCO merely needs to have taken specific actions to encourage and facilitate the false claims in order to be directly liable under the FCA. "[E]ven where the non-submitting entity was not the prime mover of the alleged fraud, courts have found such entities potentially liable on the theory that they caused the presentation of false claims where they agreed to take certain critical actions in furtherance of the fraud." *U.S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 127 (D.D.C. 2014). Indeed, courts have previously found that a Plaintiff-

Relator can successfully plead an FCA claim against co-Defendants who "carr[ied] out a joint business venture…devised by individuals at the highest level of these entities, whereby the separate business entities were managed and used to varying degrees to carry out a common goal." *U.S. ex rel Ebu-Issac v. Insys Therapeutics*, 2:16-CV-07937-JLS-AJW, 2021 U.S. Dist. LEXIS 163880, at *15 (C.D. Cal. Jun. 9, 2021). Here, that goal was the submission of false claims for FHA backed mortgages.

The alter ego or veil-piercing theories of liability are not required to establish that one participant in a business venture, even if it was the non-submitting entity, took critical steps in furtherance of the fraud. Further, the mere overlap in factual support for the direct claims and derivative claims is insufficient to convert direct claims into derivative claims. *See In re TPC Grp., Inc*., Case No. 22010493(CTG) 2023 Bankr. LEXIS 446, at *30 (Bankr. D. Del. Feb. 22, 2023) (stating that even where "claims all arise by virtue of [a party's] relationship with the debtors… that does not and cannot mean that the claim fits within the narrower definition of 'derivative'" in the context of bankruptcy law). Instead, it would be a drastic result to say that a company that exercises control over a company committing fraud can avoid liability for that fraud by putting the controlled

company into bankruptcy then claiming their control grants them a derivative release from their fraud.

PIMCO glosses over that the exact wording of the Bankruptcy Court's Order, to rely on the Bankruptcy Court's *dicta* that, upon reviewing the SSAC, "[it] read Paragraph 205 basically… to essentially set up 206 and 207." Defs. Mot., Ex. B at 49:18-19. The Bankruptcy Court even noted that, apart from the manner in which the judge personally read the complaint, it was "not saying one couldn't say that PIMCO took independent action that violated the FCA in a way in which you could say a perfect stranger who wasn't a corporate affiliate might have taken such action." *Id.* at 49:22-25. As explained above, the SSAC does not set up a derivative claim but rather asserts a direct claim.

As Plaintiff-Relator will argue on appeal of the Bankruptcy Court's findings, the action against PIMCO is a direct claim and a proceeding unrelated to the bankruptcy, because it will not "alter the debtor's rights, liabilities, options, or freedom of action… [or] in any way impact[] upon the handling and administration of the bankrupt estate." *In re Lemco Gypsum*, 910 F.2d 784, 788 (11th Cir. 1990). Resolution of these claims against PIMCO would not harm FGMC's estate or its creditors. In fact, the Bankruptcy Court allowed the claims against FGMC to proceed. *See* Defs.' Mot. to Lift Stay, Ex. C at 68:23-25 (granting stay relief to

Plaintiff-Relator to pursue available insurance for claims against FGMC), *see also In re Lemco Gypsum*, 910 F.2d at 789 (determining claim not related where "connections with the estate of debtor… are simply too tenuous"). "The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of" the Bankruptcy Court. *Id.* Further, any damages against PIMCO "would not come out of [the debtor's] bankruptcy estate," and "[t]he bankruptcy estate would not be liable for [PIMCO's] acts." *Welt v. MJO Holding Corp. (In re Happy Hocker Pawn Shop, Inc.)*, 212 Fed. Appx. 811, 818 (11th Cir. 2006) (finding civil proceeding was not related to bankruptcy).

### C.  Plaintiff-Relator Should at Most be Required to Amend.

The issues of the propriety and scope of the Bankruptcy Court Order are issues for the District of Delaware court to determine on appeal and not a dispute this court should resolve here on a motion to lift the stay.

PIMCO's arguments are inappropriate for consideration of a motion for lift of a stay. Within the bankruptcy context, courts have found that "the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994)). The Court should find similarly

here. There is no reason for the Court to convert this Motion into a Motion to Dismiss, which remains stayed pending disposition of PIMCO's Motion.

Further, as the Bankruptcy Court made clear, Plaintiff-Relator should be allowed to amend the SSAC to strike the offending paragraphs and make clear that only direct claims are asserted here. While Plaintiff-Relator is considering the most appropriate time to file that amended complaint, given the pending appeal of the Bankruptcy Court Order, this Court should at most order Plaintiff-Relator to file an amended complaint. The Bankruptcy Court directly refused to order dismissal with prejudice and this Court should not grant that relief here.

## II.   THE COURT SHOULD TRANSFER THE CASE TO DELAWARE.

Given the odd procedural posture of this case, it is unclear if any party objects to transferring the case to the District of Delaware. All parties previously consented. *See* Stipulation and [Proposed] Order, ECF No. 102 (stating "the PIMCO Defendants… have stated they will not oppose the motion" to transfer). Further, this case is procedurally complicated primarily due to the ways the defendants have repeatedly tried to use the FGMC bankruptcy as a sword and a shield. It will therefore create judicial economy to consolidate this case in the District of Delaware.

The Court should permit transfer of this case to the District of Delaware both

"[f]or the convenience of the parties and witnesses, [and] in the interests of

justice." *Exceptional Mktg. Grp. v. Jones*, No. 1:10-CV-1312-TWT, 2011 U.S.

Dist. LEXIS 144823, at *4 (N.D. Ga. Dec. 15, 2011) (J. Thrash) (citing 28 U.S.C.

§ 1404(a)). Transfer is ultimately favored by the balance of the factors that courts

in this circuit consider on a motion to transfer:

> (1) the convenience of the witnesses; (2) the location of
> relevant documents and the relative ease of access to
> sources of proof; (3) the convenience of the parties; (4) the
> locus of operative facts; (5) the availability of process to
> compel the attendance of unwilling witnesses; (6) the
> relative means of the parties; (7) a forum's familiarity with
> the governing law; (8) the weight accorded a plaintiff's
> choice of forum; and (9) trial efficiency and the interests of
> justice, based on the totality of the circumstances.

*Price v. United States DOJ*, No. 16-Civ-24341-WILLIAMS/TORRES, 2018 U.S.

Dist. LEXIS 243795, at *2-3 (S.D. Fla. May 21, 2018) (citing *Manuel v.

Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). The totality of these

factors favor transfer, and the small number of those that do not favor transfer are

neutral.

Transfer of the action to Delaware would be more convenient to both

parties: PIMCO is also a participant in the ongoing FGMC bankruptcy in

Delaware, and venue in the District of Delaware, close to the situs of the ongoing

-11-

bankruptcy action of co-Defendant FGMC, would help ease resolution of any

disputes that arise from the bankruptcy action in the same district. Further, "the

fact that the plaintiff is requesting the transfer can be considered as one factor in

favor of allowing a change of venue." *Exceptional Mktg. Grp.*, 2011 U.S. LEXIS

144823, at *6. Ensuring that both this action and the associated bankruptcy are

within the same judicial district would also further the interests of judicial

economy by consolidating the district in which these two actions are being

litigated.

The relevant documents concerning the bankruptcy are located in Delaware,

which weighs in favor of transfer. *See Brandywine Communs. Techs., LLC v. Cisco

Sys., Inc.*, No. 6:11-cv-1843-Orl-36DAB, 2012 U.S. Dist. LEXIS 68317, at *16

(M.D. Fla. Mar. 26, 2012) (finding on party's motion to transfer that "the place

where defendant's documents are kept weighs in favor of transfer to that

location"). The locus of operative facts surrounding the administration of FGMC's

bankruptcy trust are also located in Delaware, because that is where the

Bankruptcy Court sits. The District Court of Delaware is also well equipped to

handle the complex factual and procedural issues posed by both this FCA action

and the FGMC bankruptcy: FCA actions are federal and implicate no unique issues

of state law, but the bankruptcy of co-Defendant FGMC in Delaware means the District of Delaware possesses unique insight and experience into this claim.

Those factors that do not explicitly favor transfer are, at worst, neutral. Even if the locus of operative facts with respect to the FCA claims did not specifically take place in Delaware, the nationwide nature of PIMCO's sweeping fraud scheme means that resolution of this case is just as appropriate in Delaware as it is in Georgia. Witnesses relevant to the allegations against PIMCO do not all live in Georgia, where the action is currently located. Travel to another state is required regardless of where the action is tried, and so the factor regarding the convenience of witnesses is neutral. The FCA has nationwide service of process, 31 U.S.C. § 3731(a), so the prong concerning the availability of process to compel unwilling witnesses is not at issue in this action. Finally, the parties possess the means to litigate this suit in the District of Delaware, and so this factor is also neutral.

In sum, the totality of factors considered in this circuit favor transfer of this action to the U.S. District Court to the District of Delaware.

## III.   THE COURT SHOULD COMPEL PRODUCTION OF PIMCO'S INSURANCE POLICIES.

Finally, the Court should compel PIMCO to produce the insurance policies that may cover the claims asserted in this action. Plaintiff-Relator first requested

these insurance policies in her first Request for Production, and PIMCO declined

to produce any documents in response:

> **Request for Documents No. 1:**
> Any and all Documents Concerning any insurance agreement
> under which any person carrying on an insurance business may
> be liable to satisfy part or all of a judgment which may be
> entered in this action or to indemnify or reimburse for payments
> to satisfy the judgment.
>
> **Response to Request No. 1:**
> The PIMCO Defendants object to this Request on the grounds
> that it is overbroad and unduly burdensome. Subject to and
> without waiving any of the foregoing general or specific
> objections, the PIMCO Defendants will not produce documents
> in response to this Request and refer Relator to the PIMCO
> Defendants' Initial Disclosures served on December 28, 2022.

*See* First Request for Production of Documents to PIMCO at No. 1, Attach. 2.

But after conferring with Plaintiff-Relator, PIMCO itself stated that it would

produce its relevant insurance policies pending the Motion to Dismiss. *See* Defs.'

Mot. to Lift Stay, Ex. C at 7 (stating, through counsel, "[w]e will gather and

produce the relevant insurance policies that cover the PIMCO Defendants"double-quote).

However, PIMCO now seeks to shirk that obligation. *Id.* at 1-2 (claiming through

counsel "you [Plaintiff-Relator] are enjoined from proceeding in this action"). The

Court should hold PIMCO to its word, and compel the production of those

insurance policies.

Unlike PIMCO asserts now, there are, at minimum, live direct FCA claims in the action, and PIMCO is obligated to produce those documents it has represented it would produce with respect to those live direct claims. *See N. Am. Transp. Servs., LLC v, Ryder Truck Rental, Inc.*, No. 21-mc-21911-COOKE/O'SULLIVAN, 2021 U.S. Dist. LEXIS 143590, at *7 (S.D. Fla. Aug. 2, 2021) (requiring Defendants produce their insurance policies where "plaintiffs [met] their burden of showing that [Defendant's] policies are relevant to the claims against them in the Underlying Litigation and have a reasonable basis to believe that coverage may be afforded by those policies"). The "disclosure of insurance information is a common practice" in discovery, and PIMCO is obligated to produce those relevant documents it has conceded exist. *Id.* at *9. Requiring the production of insurance policies that PIMCO has conceded exist is both an exceedingly small burden and falls squarely in the scope of what PIMCO is obligated to produce. *See* FRCP 26(a)(2)(iv) (stating that a party must, as part of initial disclosures, disclose the existence of an insurance agreement "for inspection and copying as under Rule 34"); FRCP 34(a) (allowing party to serve requests for production). PIMCO cannot unilaterally refuse to hand over those insurance documents for which a request has been issued given their obligations under the Federal Rules. *See Read v. Teton Springs Golf & Casting Club*, No. CV 08-99-E-

-15-

EJL-REB, 2009 U.S. Dist. LEXIS 86400, at *6 (D. Idaho Sep. 21, 2009) (granting

Plaintiff's motion to compel production of insurance documents where

"Defendants did not produce the at-issue insurance policies as part of their initial

disclosures or, for that matter, in response to Plaintiff's discovery requests" where

Defendants previously stated "they 'remain willing to produce the policies'").

Further, the insurance policies are a key factor in determining if this case can be

resolved without continued protracted legal maneuvers.

## CONCLUSION

For all the foregoing reasons, Plaintiff-Relator Kari Crutcher respectfully

moves this Court to deny the Defendants' Motion to Lift the Stay and grant her

Cross-Motions for Transfer and to Compel the Production of PIMCO's Insurance

Policies.

Respectfully submitted this 22nd day of September, 2023.


/ s/ Samuel J. Buffone Jr.

Samuel J. Buffone, Jr. (admitted *pro hac vice*)
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

-and-

J. Nelson Thomas, Esq. (Admitted *pro hac vice*)
Jonathan W. Ferris, Esq. (Admitted *pro hac vice*)
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

-and-

Julie K. Bracker
Georgia Bar No. 073803
Jason Marcus
Georgia Bar No. 949698
**BRACKER & MARCUS LLC**
3225 Shallowford Road
Suite 1120

-17-

Marietta, GA 30062
Telephone: (770) 988-5035
Fax (678) 648-5544
Julie@FCAcounsel.com
Jason@FCAcounsel.com

***Attorneys for Plaintiff-Relator Kari Crutcher***

**CERTIFICATION**

Counsel for Plaintiff-Relator Kari Crutcher certifies, per N.D. Ga. L. Civ. R.

7.1D, that the foregoing document was prepared with one of the font and point

selections (Times New Roman, 14 point) approved by N.D. Ga. L. Civ. R. 5.1B.

*/ s/ Samuel J. Buffone Jr.*

Samuel J. Buffone, Jr. (admitted *pro hac vice*)
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

***Attorneys for Plaintiff-Relator Kari Crutcher***

## **<u>CERTIFICATION</u>**

Counsel for Plaintiff-Relator Kari Crutcher certifies, per N.D. Ga. L. Civ. R.

37.1(A)(1), that counsel for Plaintiff-Relator and Defendant met and conferred per

Fed. R. Civ. P. 37(a)(2)(A)(B) with respect to the discovery request cited in

Plaintiff-Relator's Cross-Motion to Compel.

*/ s/ Samuel J. Buffone Jr.*

Samuel J. Buffone, Jr. (admitted *pro hac vice*)
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

***Attorneys for Plaintiff-Relator Kari Crutcher***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the indicated date, the undersigned filed and served the foregoing document, using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: September 22, 2023

By:  */s/ Samuel J. Buffone Jr.*

Samuel J. Buffone, Jr. (admitted *pro hac vice*)
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

***Attorneys for Plaintiff-Relator Kari Crutcher***